AMARYLLIS A. MCDONALD,     )
     )
     Plaintiff,     )
     )
     vs.     )     **Case No. 1:12CV 42 JCH(LMB)**
     )
MICHAEL J. ASTRUE,     )
**Commissioner of Social Security,**     )
     )
     Defendant.     )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision denying the application of Amaryllis A. McDonald for Disability Insurance Benefits under Title II of the Social Security Act. The cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b). Plaintiff has filed a Brief in Support of Plaintiff's Complaint. (Document Number 14). Defendant has filed a Brief in Support of the Answer. (Doc. No. 19).

## Procedural History

On October 17, 2008, plaintiff filed her application for benefits, claiming that she became unable to work due to her disabling condition on July 1, 1994. (Tr. 109-15). This claim was denied initially, and following an administrative hearing, plaintiff's claim was denied in a written opinion by an Administrative Law Judge (ALJ), dated November 5, 2010. (Tr. 65-70, 10-17).

Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on January 27, 2012. (Tr. 1-5). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

## Evidence Before the ALJ

### A. ALJ Hearing

Plaintiff's administrative hearing was held on August 27, 2010. (Tr. 24). Plaintiff was present and was represented by counsel. (Id.). Also present was witness Terry M. McDonald. (Id.).

The ALJ stated that plaintiff had only applied for Title II benefits, and that the issue was whether plaintiff was disabled prior to her date last insured of September 30, 1997. (Tr. 26).

The ALJ examined plaintiff, who testified that she lived one mile outside of town on a one-acre plot. (Tr. 28). Plaintiff stated that her husband had a garden on their property, but she was not able to work in the garden due to back pain. (Tr. 29).

Plaintiff testified that she was sixty-three years of age, and had a twelfth grade education. (Id.). Plaintiff stated that she did not take any special education classes. (Id.).

Plaintiff testified that she had most recently worked as an insurance agent at Combined Insurance. (Tr. 30). Plaintiff stated that this job involved driving considerable distances daily and "cold calling" people. (Id.).

Plaintiff testified that, due to the significant amount of driving involved in this position, she attempted to work as an independent agent. (Id.). Plaintiff stated that this did not work out because she ended up having to drive to appointments along with the agents she employed. (Id.).

Plaintiff testified that, prior to working as an insurance agent, she worked as an office manager at a funeral home. (Tr. 31). Plaintiff stated that she took care of the bills, paperwork, and bookings. (Id.). Plaintiff testified that she obtained an insurance license and funeral director's license at this position. (Id.). Plaintiff stated that she also handled some evening visitations when the funeral home was busy. (Tr. 32). Plaintiff testified that she left this position when the business was sold to an individual she described as a "crook." (Id.).

Plaintiff stated that she had not worked since 2003. (Tr. 33). Plaintiff testified that her husband supports her. (Id.). Plaintiff stated that she worked at the insurance company during a period in which she needed additional income because her sons were college-aged. (Id.).

Plaintiff testified that she did not believe she could have worked at an office job in 1997 because she had difficulty sitting for long periods. (Tr. 34). Plaintiff stated that, during that time period, her husband would have to stop about every hour to hour-and-a-half when driving to visit their son in Branson, Missouri. (Id.). Plaintiff testified that she would have to get out of the car due to pain. (Tr. 35).

Plaintiff stated that she did not take much pain medication during this period because she has a high tolerance for pain. (Id.). Plaintiff testified that her doctors always prescribed pain medication when she requested it, but she only took it if the pain was more than she could handle. (Id.).

The ALJ noted that plaintiff did not see her chiropractor from January 1996 through December 1999. (Tr. 36).

The ALJ examined Terry M. McDonald, who testified that he was plaintiff's husband, and that they had been married for forty years. (Tr. 38). Mr. McDonald testified that their insurance

company changed around January 1996, and plaintiff had to change doctors as a result. (Tr. 39). Mr. McDonald stated that plaintiff saw two different doctors during that time period. (Id.).

The ALJ stated that the medical records in the file from this time period were limited, and requested that plaintiff submit additional records. (Id.). Plaintiff's attorney indicated that he would try to obtain these records. (Tr. 40).

Plaintiff testified that she applied for disability benefits because, in the course of applying for Social Security benefits based on her age, the clerk advised her to consider applying for disability benefits. (Tr. 41). Plaintiff stated that she did not apply for disability benefits earlier because she did not believe she was eligible. (Id.).

Plaintiff's attorney next examined plaintiff, who testified that she was involved in an automobile accident in July 1994. (Tr. 42). Plaintiff stated that she earned income until 1997 from policy renewals, although she was not actively working during this time. (Id.).

Plaintiff testified that, from the time of her accident in July 1994 through September 30, 1997, she did not work and did not feel like doing anything. (Tr. 43). Plaintiff stated that, for a few months following her accident, she only went from her bed to the couch. (Id.). Plaintiff stated that she was scared to drive. (Tr. 44).

Plaintiff testified that, since September of 1997, her life has not improved, and she still does not feel like doing anything. (Id.). Plaintiff stated that her biggest complaints are with regard to her head and her lower back. (Id.). Plaintiff testified that she experiences lower back pain. (Id.). Plaintiff stated that she is only able to lift a ten-pound bag of cat food. (Id.). Plaintiff testified that prior to her accident, she was able to move a piano. (Tr. 45).

Plaintiff stated that some days she feels better than others. (Id.). Plaintiff testified that, on

a bad day, she has no energy.  (Tr. 46).  Plaintiff stated that she just sits down and watches television.  (Id.).  Plaintiff testified that her husband vacuums and she dusts.  (Id.).

Plaintiff stated that she experiences painful headaches.  (Id.).  Plaintiff testified that she sometimes will go longer than a month without experiencing a headache.  (Id.).  Plaintiff stated that, when she experiences a headache, she goes to bed.  (Id.).  Plaintiff rated the pain from her headaches as a seven to eight on a scale of zero to ten.  (Tr. 47).  Plaintiff testified that she had been experiencing these headaches at the same severity since she sustained a head injury in 1994.  (Id.).  Plaintiff stated that she did not believe she could hold a job due to these headaches.  (Id.).  Plaintiff testified that she would have to miss two to three days of work a month most months due to her headaches, although some months she does not experience any headaches.  (Id.).

Plaintiff stated that she takes Hydrocodone[1] and Lorcet[2] for her back pain and headaches.  (Tr. 48).

Plaintiff testified that she injured her lower back and hip in the accident.  (Id.).  Plaintiff stated that she is unable to lift more than ten pounds, or walk farther than half of one block.  (Tr. 49).  Plaintiff stated that she stopped attending church regularly shortly after the accident because it was difficult to sit for the hour to hour-and-a-half-long service.  (Id.).  Plaintiff stated that she has difficulty standing, and she is only able to stand long enough to load dishes in the dishwasher.  (Id.).  Plaintiff testified that she does not stand in one position for longer than two to three minutes because she becomes weak and experiences back pain.  (Tr. 50).

---

[1] Hydrocodone is an opioid analgesic indicated for the relief of moderate to moderately severe pain.  See Physician's Desk Reference (PDR), 3144-45 (63rd Ed. 2009).

[2] Lorcet is a combination of acetaminophen and hydrocodone indicated for the treatment of moderate to severe pain.  See PDR at 1180.

Plaintiff stated that she no longer experiences hip pain, but she experiences lower back pain instead. (Id.). Plaintiff testified that she underwent hip replacement surgery in 2009. (Id.).

Plaintiff stated that she has difficulty holding objects and she often drops things. (Tr. 51). Plaintiff testified that she is unable to lift heavy pots and pans. (Id.). Plaintiff stated that she and her husband prepare meals together. (Id.).

Plaintiff testified that she has been unable to squat down since the accident. (Tr. 52).

Plaintiff stated that her husband does the majority of the shopping. (Id.). Plaintiff testified that she tries to shop as little as possible. (Id.).

Plaintiff stated that she does not participate in any social activities, other than occasionally attending Church. (Id.). Plaintiff testified that she used to enjoy playing golf, but she no longer plays because she is unable to swing the club well enough. (Tr. 53). Plaintiff stated that she has only played golf a couple times since the accident. (Id.). Plaintiff testified that she did not play golf in September of 1997. (Id.).

Plaintiff stated that she also experiences an itching type of pain in her head occasionally since the accident. (Tr. 54). Plaintiff testified that no doctor has told her the cause of this pain. (Tr. 55).

Plaintiff stated that she has difficulties with her memory, and that her husband has to help her recall information. (Tr. 56).

Plaintiff's attorney examined Mr. McDonald, who testified that he had observed a change in plaintiff's temperament since the accident. (Id.). Mr. McDonald stated that plaintiff loses her temper more easily since the accident. (Id.). Mr. McDonald testified that plaintiff also is unable to handle stress well following the accident. (Tr. 57). Mr. McDonald stated that plaintiff's

memory has worsened through the years.  (Id.).

The ALJ then re-examined plaintiff, who testified that she was injured while working for the insurance company.  (Id.).  Plaintiff stated that she received a workers' compensation settlement in 2000.  (Id.).  Plaintiff testified that she was evaluated by a workers' compensation doctor in connection with her claim.  (Id.).  Plaintiff stated that she was no longer receiving a weekly stipend from her workers' compensation claim.  (Id.).  Plaintiff's attorney stated that plaintiff received a lump-sum settlement of $56,000.00 for medical, and her portion of the settlement was $29,189.16.  (Tr. 59).

Plaintiff testified that she last went on vacation in February of the past year.  (Tr. 60).  Plaintiff stated that she and her husband drove to visit their children in Ocean Springs, Mississippi, and then drove to St. Augustine, Florida, where they stayed in a condo for one week.  (Id.).  Plaintiff testified that they then went back to their children's home before driving home.  (Id.).  Plaintiff stated that the trip wore her out.  (Id.).

The ALJ indicated that he would leave the record open for one month so that plaintiff could submit additional medical records.  (Id.).

## B.    Relevant Medical Records

The record reveals that plaintiff presented to the emergency room on July 2, 1994, after being involved in a motor vehicle accident.  (Tr. 204).  Plaintiff sustained a significant laceration to her forehead scalp, loss of memory, multiple contusions and abrasions to her face and neck.  (Id.).  Plaintiff was admitted for observation.  (Id.).  Plaintiff underwent x-rays of the cervical[3]

---

[3]The back is comprised of the cervical, thoracic and lumbar regions.  In common terms, the cervical region of the spinal column is the neck; the thoracic region is the main part of the

spine and scalp, which revealed only osteoarthritic[4] spur formation at C5-C6 and C6-C7 with minimal narrowing at the C6-C7 interspace. (Tr. 200). No fracture was noted. (Id.). Plaintiff showed no change in her mental status. (Id.). Plaintiff's lacerations were repaired, and she was discharged on the same day. (Id.).

Plaintiff underwent a CT scan of the head on July 15, 1994 due to complaints of headaches, which was unremarkable. (Tr. 199).

Plaintiff underwent a chest x-ray on September 6, 1994, which revealed no acute cardiopulmonary change. (Tr. 260).

Plaintiff presented to neurologist Riyadh J. Tellow, M.D. on December 19, 1994, with complaints of a sharp stabbing pain behind the left eye since the accident. (Tr. 323). Plaintiff also reported migraine headaches, although she indicated that she experienced migraines prior to the accident. (Id.). Dr. Tellow diagnosed plaintiff with status post head injury resulting from a motor vehicle accident, brief severe stabbing type of pain behind the left eye, probably neuralgic in nature; memory difficulties, mood swings, and mild depression associated with the head injury.

_____

back; and the lumbar region is the lower back. There are seven cervical vertebrae, twelve thoracic vertebrae, and five lumbar vertebrae. The sacrum lies directly below the fifth lumbar vertebra. The coccyx, or tail bone, lies below the sacrum. See J. Stanley McQuade, Medical Information Systems for Lawyers, § 6:27 (1993).

[4]Osteoarthritis is arthritis characterized by erosion of articular cartilage, either primary or secondary to trauma or other conditions, which becomes soft, frayed, and thinned with eburnation of subchondral bone and outgrowths of marginal osteophytes; pain and loss of function result; mainly affects weight-bearing joints. Stedman's Medical Dictionary, 1388 (28th Ed. 2006).

(Tr. 324). Dr. Tellow prescribed Tegretol[5] for plaintiff's neuralgic[6] pain. (Tr. 325). On January

16, 1995, Dr. Tellow indicated that plaintiff responded well to Tegretol. (Tr. 320).

On January 31, 1995, plaintiff presented to Dr. Tellow with complaints of feeling nervous

and requesting more Xanax.[7] (Tr. 319). Dr. Tellow indicated that plaintiff had called the office

on January 26, 1995, stating that she had lost control of her emotions and requested nerve

medication. (Id.). Dr. Tellow noted that plaintiff had been on Xanax prior to her accident. (Id.).

Plaintiff also reported a severe throbbing headache behind the eye, and requested medication for

this. (Id.). Dr. Tellow stated that he had the impression that plaintiff was "manipulative and

trying to get certain medications." (Id.). Dr. Tellow indicated that he refused plaintiff any further

Xanax, pain killers, or any habit-forming medications. (Id.).

Plaintiff saw William K. Kapp, M.D. on January 15, 1996, at which time plaintiff reported

that she got better six months after the accident, but her energy level never improved. (Tr. 341).

Plaintiff complained of occasional pain in the left hip and knee. (Id.). X-rays of the left knee and

left hip were unremarkable. (Id.). Upon physical examination, plaintiffs had full range of motion

of the left hip and left knee, but tenderness to palpation over the left SI joint,[8] and some mild

---

[5]Tegretol is indicated for the treatment of nerve pain. See WebMD,
http://www.webmd.com/drugs (last visited December 3, 2012).

[6]Pain of a severe, throbbing, or stabbing character in the course or distribution of a nerve.
Stedman's at 1307.

[7]Xanax is indicated for the treatment of anxiety and panic disorders. See WebMD,
http://www.webmd.com/drugs (last visited December 3, 2012).

[8]The sacroiliac ("SI") joint is the joint that connects the sacrum and iliac bones to form the
pelvis. See Stedman's at 1015.

patellar tendonitis.[9]  (Id.).  Dr. Kapp diagnosed plaintiff with probable residual low back pain and left knee patellar tendonitis.  (Id.).  On February 5, 1996, plaintiff reported that her pain was a one on a scale of zero to ten.  (Tr. 340).  Plaintiff complained of pain in the lumbar back and right shoulder, which was "not very impressive."  (Id.).  Dr. Kapp prescribed Voltaren.[10]  (Id.).

Plaintiff saw a physical therapist in January and February of 1996.  (Tr. 220-23).  On February 19, 1996, plaintiff reported that she was pain free.  (Tr. 215).

Plaintiff presented to Dr. Kapp for follow-up on March 8, 1996, at which time it was noted that she was improving and her range of motion was "excellent."  (Tr. 339).  Plaintiff was having little, if any, symptoms.  (Id.).  Plaintiff was advised to continue doing her exercises.  (Id.).

On August 19, 1996, plaintiff was doing better but was still having some tendonitis in the right shoulder, left knee, and left SI joint symptoms.  (Tr. 338).  Plaintiff had not been doing her exercises.  (Id.).  Dr. Kapp advised plaintiff to continue doing her exercises.  (Id.).  Plaintiff returned for follow-up on September 13, 1996, at which time she reported that her pain was much better.  (Tr. 385).  Dr. Kapp refilled plaintiff's prescription for Voltaren and indicated that he would see her in six months.  (Id.).

On March 10, 1997, plaintiff complained of chronic low back pain.  (Tr. 336).  Dr. Kapp referred plaintiff to Dr. Burns, as her back problem was nonoperative.  (Id.).

Plaintiff presented to Bernard C. Burns, D.O. on May 13, 1997, for an evaluation in connection with her workers' compensation claim.  (Tr. 334).  Plaintiff reported that her average

---

[9]Inflammation of a tendon.  Stedman's at 1946.

[10]Voltaren is indicated for the treatment of osteoarthritis.  See PDR at 2334.

pain was a two on a scale of zero to ten, her worst pain was an eight to nine, and her best pain was a zero. (Id.). Plaintiff indicated that she worked as an insurance agent. (Id.). Plaintiff complained of intermittent pain in her left eye, which had improved significantly; and intermittent pain in the left hip, left leg, left knee, and right shoulder; and a constant achy pain in the mid-lumbar area. (Tr. 333). Plaintiff also reported low mood, mild memory impairment, and difficulty concentrating. (Id.). Upon examination, plaintiff had full range of motion of the extremities, muscle strength of 4/5, full joint range of motion, and intact sensation. (Tr. 332). Tenderness to the medial aspect of the left knee joint was noted. (Id.). Plaintiff's shoulder range of motion was within normal limits. (Id.). Mild tenderness was noted across the right trapezius areas, paraspinous muscle, and left SI joint. (Id.). Straight leg raising was negative. (Id.). Plaintiff's lumbar range of motion was mildly limited by flexion at fifty degrees. (Id.). Dr. Burns did not perform formal mental status testing. (Id.). Dr. Burns diagnosed plaintiff with: status post MVA with minor closed head injury with sequelae of memory impairments, mood lability, and minor depression; facial lacerations, nasal fracture with sequelae of neuropathic left facial and eye pain; left sacroiliitis[11] with myofascial[12] pain components; and mechanical lower back pain with myofascial pain components. (Tr. 332). Dr. Burns found that plaintiff was not appropriate for maximum medical improvement and stated that plaintiff had had minimal attention to her "traumatic brain injury." (Id.). Dr. Burns stated that plaintiff could benefit from more focused treatment and initiation of a life-long exercise program. (Id.).

---

[11]Inflammation of the SI joint. Stedman's at 1714.

[12]Of or relating to the fascia surrounding and separating muscle tissue. Stedman's at 1272.

Plaintiff presented to Dr. Kapp on July 22, 1998, at which time Dr. Kapp indicated that he had not seen plaintiff since May of 1997. (Tr. 329). Plaintiff complained of pain in her low back and hip, which had recently worsened. (Id.). Upon examination, plaintiff had full range of motion of her hip, normal range of motion of her SI joints, and normal heel and toe walking. (Id.). Plaintiff's straight leg raising was mildly positive on the left, and plaintiff continued to complain of pain radiating down her left leg with some occasional numbness. (Id.). Dr. Kapp diagnosed plaintiff with low back pain with left lower extremity radiculopathy.[13] (Id.). He scheduled an MRI. (Id.).

On August 5, 1998, Dr. Kapp indicated that plaintiff had undergone a lumbar spine MRI, which was essentially unremarkable except for some mild degenerative disc disease[14] and posterior facet arthritis. (Tr. 326). Dr. Kapp found that plaintiff was at maximum medical improvement and had no need for further intervention. (Id.). Dr. Kapp refilled plaintiff's medications and advised her to continue her home exercise program. (Id.).

Plaintiff presented to James E. Palen, M.D. on May 24, 2000, for an examination in connection with her disability claim. (Tr. 364-65). Plaintiff complained of pain in her left hip, leg and groin area. (Id.). Plaintiff reported that she had difficulty standing, walking, bending, or sitting for long periods. (Tr. 365). Plaintiff was not taking any medications related to her injury. (Id.). Upon examination, plaintiff had tenderness in the lower part of the left buttock, which radiated into the left groin; normal range of motion; and intact neurovascular system. (Id.). Dr.

---

[13]Disorder of the spinal nerve roots. Stedman's at 1622.

[14]A general term for both acute and chronic processes destroying the normal structure and function of the intervertebral discs. See Medical Information Systems for Lawyers, § 6:201.

Palen diagnosed plaintiff with sciatica,[15] and recommended treatment at a pain clinic. (Id.).

Plaintiff underwent pulmonary function studies on March 31, 2004, and July 17, 2006, which revealed mild obstructive lung disease with air-trapping. (Tr. 761, 607).

On September 29, 2009, Dr. Kapp performed a left total hip arthroplasty[16] due to complaints of chronic left hip pain resulting from osteoarthritis. (Tr. 515). Dr. Kapp had examined plaintiff the prior day and diagnosed plaintiff with osteoarthritis, total hip arthroplasty scheduled; hypertension; history of asthma, uses inhalers; and GERD.[17] (Tr. 518).

## The ALJ's Determination

The ALJ made the following findings:

1.    The claimant last met the insured status requirements of the Social Security Act on September 30, 1997.

2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 1, 1994 through her date last insured of September 30, 1997 (20 CFR 404.1571 *et seq.*).

3.    Through the date last insured, the claimant had the following severe impairments: degenerative disc disease and asthma (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, and 404.1526).

---

[15]Pain in the lower back and hip radiating down the back of the thigh into the leg. Stedman's at 1731.

[16]Creation of an artificial joint to correct advanced degenerative arthritis. Stedman's at 161.

[17]Gastroesophageal reflux disease (GERD) is a syndrome due to structural or functional incompetence of the lower esophageal sphincter, which permits retrograde flow of acidic gastric juice into the esophagus. See Stedman's at 556.

5.  After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can no more than occasionally perform postural activities such as stooping and kneeling.

6.  Through the date last insured, the claimant was capable of performing past relevant work as an insurance agent. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.  The claimant was not under a disability, as defined in the Social Security Act, at any time from July 1, 1994, the alleged onset date, through September 30, 1997, the date last insured (20 CFR 404.1520(f)).

(Tr. 12-16).

The ALJ's final decision reads as follows:

Based on the application for a period of disability and disability insurance benefits protectively filed on October 17, 2008, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through September 30, 1997, the last date insured.

(Tr. 17).


## Discussion

A.  **Standard of Review**

Judicial review of a decision to deny Social Security benefits is limited and deferential to the agency. See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996). The decision of the SSA will be affirmed if substantial evidence in the record as a whole supports it. See Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion. See Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998). If, after review, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's

findings, the denial of benefits must be upheld. See Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). The reviewing court, however, must consider both evidence that supports and evidence that detracts from the Commissioner's decision. See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996). "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary." Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998). The analysis required has been described as a "searching inquiry." Id.

## B.     The Determination of Disability

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416 (I) (1) (a); 42 U.S.C. § 423 (d) (1) (a). The claimant has the burden of proving that s/he has a disabling impairment. See Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a person is disabled. See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d. 119 (1987); Fines v. Apfel, 149 F.3d 893, 894-895 (8th Cir. 1998). First, it is determined whether the claimant is currently engaged in "substantial gainful employment." If the claimant is, disability benefits must be denied. See 20 C.F.R. §§ 404.1520, 416.920 (b). Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments. See 20 C.F.R §§ 404.1520 (c), 416.920 (c). To qualify as severe, the impairment must

significantly limit the claimant's mental or physical ability to do "basic work activities." Id. Age, education and work experience of a claimant are not considered in making the "severity" determination. See id.

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment. See 20 C.F.R. §§ 404.1520 (d), 416.920 (d). This listing is found in Appendix One to 20 C.F.R. 404. 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired. See 20 C.F.R. §§ 404.1520 (d), 416.920 (d). If it does not, however, the evaluation proceeds to the next step which inquires into whether the impairment prevents the claimant from performing his or her past work. See 20 C.F.R. § 404.1520 (e), 416.920 (e). If the claimant is able to perform the previous work, in consideration of the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled. See id. If the claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. See 20 C.F.R. §§ 404.1520 (f), 416.920 (f). The claimant is entitled to disability benefits only if s/he is not able to perform any other work. See id. Throughout this process, the burden remains upon the claimant until s/he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work. See Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

The Commissioner has supplemented this five-step process for the evaluation of claimants

with mental impairments. See 20 C.F.R. §§ 404.1520a (a), 416.920a (a). A special procedure must be followed at each level of administrative review. See id. Previously, a standard report entitled "Psychiatric Review Technique Form" (PRTF), which documented application of this special procedure, had to be completed at each level and a copy had to be attached to the ALJ's decision, although this is no longer required. See 20 C.F.R. §§ 404.1520a (d), (d) (2), (e), 416.920a (d), (d) (2), (e); 65 F.R. 50746, 50758 (2000). Application of the special procedures required is now documented in the decision of the ALJ or Appeals Council. See 20 C.F.R. §§ 404.1520a (e), 416.920a (e).

**C.      Plaintiff's Claims**

Plaintiff first argues that the ALJ erred in not considering the combined effect of all of plaintiff's impairments. Plaintiff next argues that the ALJ erred in applying an improper standard when assessing the credibility of plaintiff's complaints of pain. The undersigned will discuss plaintiff's claims in turn, beginning with the ALJ's credibility analysis.

**1.      Credibility Analysis**

Plaintiff argues that the ALJ applied an improper standard when assessing the credibility of plaintiff's subjective complaints of pain. Plaintiff does not point to any specific findings of the ALJ to which he objects. Defendant contends that the ALJ properly assessed plaintiff's credibility under the standard of Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski, 739 F.2d at 1322. Although an ALJ may reject a claimant's subjective

allegations of pain and limitation, in doing so the ALJ "must make an express credibility determination detailing reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the <u>Polaski</u> factors." <u>Kelley</u>, 133 F.3d at 588. <u>Polaski</u> requires the consideration of: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) aggravating and precipitating factors; (4) dosage, effectiveness and side effects of the medication; and (5) functional restrictions. <u>Polaski</u>, 739 F.2d at 1322.

"'If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the Court] will normally defer to the ALJ's credibility determination.'" <u>Gregg v. Barnhart</u>, 354 F.3d 710, 714 (8th Cir. 2008)); <u>accord</u> <u>Buckner v. Astrue</u>, 646 F.3d 549, 558 (8th Cir. 2011). Additionally, although "ALJs "must acknowledge and consider [the] . . . <u>Polaski</u> factors before discounting a claimant's subjective complaints, . . . ALJs 'need not explicitly discuss each <u>Polaski</u> factor.'" <u>Wildman v. Astrue</u>, 596 F.3d 959, 968 (8th Cir. 2010) (quoting <u>Goff v. Barnhart</u>, 421 F.3d 785, 791 (8th Cir. 2005)); <u>accord</u> <u>Buckner</u>, 646 F.3d at 559 (holding that an ALJ's credibility findings are not negated by a failure to cite <u>Polaski</u> when the relevant factors are considered); <u>Lowe v. Apfel</u>, 226 F.3d 969, 971-72 (8th Cir. 2000) (holding that although ALJ was required to make express credibility determinations, he "was not required to discuss methodically each <u>Polaski</u> consideration, so long as he acknowledged and examined those considerations before discounting [the claimant's] subjective complaints").

The undersigned finds that the ALJ's credibility determination regarding plaintiff's subjective complaints of pain and limitations is supported by substantial evidence in the record as a whole. The ALJ first noted that, while plaintiff's date last insured was in 1997, she did not file her claim until January 2009. (Tr. 14). The ALJ stated that plaintiff's lack of urgency lessens her

credibility about the severity of her limitations. (Id.). An ALJ may consider a delay in filing benefits as a factor detracting from a claimant's credibility. See Summers v. Astrue, No. 1:09CV179DDN, 2011 WL 665677, * 6 (Feb. 14, 2011); Olson v. Astrue, No. 4:08CV140TIA, 2009 WL 3230835, *8 (Sept. 30, 2009). The ALJ properly found the fact that plaintiff waited over fourteen years from her alleged onset date before filing her disability claim detracted from her credibility.

The ALJ next stated that the objective medical evidence failed to support plaintiff's complaints about the severity of her spinal problems. (Tr. 14). Although the ALJ may not discount subjective complaints solely because they are not fully supported by the objective medical evidence, the lack of supporting objective medical evidence may be considered as a factor in evaluating the claimant's credibility. See Curran-Kicksey v. Barnhart, 315 F.3d 964, 968 (8th Cir. 2003).

The ALJ stated that the injuries plaintiff sustained as a result of the motor vehicle accident were relatively minor except for a significant gash on her forehead. (Tr. 14, 204, 200). Specifically, x-rays revealed no fracture, and she was only hospitalized for one day following the accident. (Id.). A CT scan plaintiff underwent two weeks later was unremarkable. (Tr. 199). In January 1995, Dr. Tellow indicated that plaintiff's neuralgic pain responded well to medication. (Tr. 320). In January 1996, plaintiff complained of only occasional pain in the left hip and knee. (Tr. 341). X-rays of the left knee and left hip were unremarkable. (Id.). Upon examination, plaintiff had full range of motion of the left hip and left knee, but tenderness over the left SI joint, and some mild patellar tendonitis. (Id.). In February 1996, plaintiff reported her pain as a one on a scale of zero to ten to Dr. Kapp, and reported to a physical therapist that she was pain-free.

(Tr. 340, 215). In March 1996, Dr. Kapp indicated that plaintiff was improving and that her range of motion was excellent. (Tr. 339). In August 1996, Dr. Kapp indicated that plaintiff was doing better. (Tr. 338). Plaintiff still complained of tendonitis in the right shoulder, left knee, and left SI joint symptoms, but she was not doing her exercises. (Id.). Plaintiff reported that her pain was much better in September 1996. (Tr. 385). Dr. Burns examined plaintiff on May 13, 1997, at which time plaintiff rated her pain as a two on average. (Tr. 334). Plaintiff had full range of motion of the extremities, muscle strength of 4/5, full joint range of motion, intact sensation, normal shoulder range of motion, and negative straight leg raising. (Tr. 332). Dr. Burns noted only tenderness of the left knee joint, right trapezius areas, paraspinous muscle, and left SI joint. (Id.). The ALJ properly found that the objective medical evidence was not supportive of disabling injuries prior to the expiration of plaintiff's insured status.

The ALJ also found that the medical evidence failed to support plaintiff's allegations regarding the severity of her asthma. (Tr. 15). The ALJ pointed out that plaintiff did not seek much treatment for asthma prior to the expiration of her insured status. (Id.). A chest x-ray plaintiff underwent in September 1994 revealed no acute cardiopulmonary change, infiltrates, or mass. (Tr. 260). Pulmonary testing in March 2004 and July 2006 revealed only mild obstructive lung disease. (Tr. 761, 607).

The ALJ also pointed out that, in January 1995, Dr. Tellow expressed concern that plaintiff might be manipulative and trying to get certain medications. (Tr. 319). The ALJ accurately stated that this does not "inspire trust" in plaintiff's allegations regarding the severity of her symptoms. (Tr. 14). See Anderson v. Barnhart, 344 F.3d 809 (8th Cir. 2003) ("A claimant's misuse of medications is a valid factor in an ALJ's credibility determinations"); Anderson v.

<u>Shalala</u>, 51 F.3d 777, 780 (8th Cir. 1995) (claimant's "drug-seeking behavior further discredits her allegations of disabling pain").

The ALJ noted that there was a gap in plaintiff's treatment with Dr. Kapp from May of 1997 to July 1998, which was inconsistent with plaintiff's allegations of disabling pain. (Tr. 329). This is an appropriate consideration, because the fact that a plaintiff fails to seek regular medical treatment disfavors a finding of disability. <u>See</u> <u>Gwathney v. Chater</u>, 104 F.3d 1043, 1045 (8th Cir. 1997).

The ALJ found that the medical evidence dated after the expiration of plaintiff's insured status was also not supportive of disabling impairments from the 1994 accident. The ALJ noted that plaintiff complained of no symptoms related to the accident when seeking treatment for her hip osteoarthritis in 2009. (Tr. 518). Finally, the ALJ pointed out that plaintiff was taking no medications related to her injury in 2000, which contradicted her allegations regarding the severity of her pain. (Tr. 15, 365). A lack of strong pain medication is inconsistent with subjective complaints of disabling pain. <u>See</u> <u>Depover v. Barnhart</u>, 349 F.3d 563, 566 (8th Cir. 2003).

An administrative opinion must establish that the ALJ considered the appropriate factors. <u>See</u> <u>Holley v. Massanari</u>, 253 F.3d 1088, 1092 (8th Cir. 2001). However, each and every <u>Polaski</u> factor need not be discussed in depth, so long as the ALJ points to the relevant factors and gives good reasons for discrediting a claimant's complaints. <u>See</u> <u>Dunahoo v. Apfel</u>, 241 F.3d 1033, 1038 (8th Cir. 2001). In this case, the reasons given above by the ALJ for discrediting plaintiff's complaints of disabling pain and limitations are sufficient and his finding that plaintiff's complaints are not entirely credible is supported by substantial evidence.

Accordingly, the undersigned recommends that the decision of the Commissioner denying

plaintiff's benefits be affirmed as to this point.

## 2. Combination of Impairments

Plaintiff argues that the ALJ erred in failing to consider the combined effect of all of plaintiff's impairments. Defendant contends that the ALJ properly evaluated the combined effects of plaintiff's impairments.

In determining whether an individual has severe impairments, the ALJ considers the combined effect of all of an individual's impairments, and then considers the combined impact of the impairments throughout the disability determination process. See 20 C.F.R. §§ 404.1523, 416.923. The ALJ complied with this regulation. The ALJ specifically found that plaintiff's "combination of impairments" did not meet or equal a listing, and then stated that he considered "all symptoms" in finding that plaintiff could perform her past work. (Tr. 13, 15) See Raney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005) (express statement that an ALJ considered the combined impairments is sufficient to show that he complied with the regulation).

The ALJ discussed plaintiff's various impairments at length in his decision. (Tr. 13-15) The ALJ found plaintiff's degenerative disc disease and asthma were severe. (Tr. 12). The ALJ found that plaintiff's headaches did not produce significant work-related limitations for twelve months or longer. (Tr. 12). The ALJ also noted that, although there was a reference in the record to a possible traumatic brain injury, a CT scan of plaintiff's head in July 1994 was unremarkable. (Tr. 13, 332, 199). Plaintiff fails to point to any specific impairment or medical evidence that the ALJ did not consider. Thus, the ALJ's decision establishes that he considered each impairment in determining that plaintiff was not disabled.

In sum, the ALJ performed a proper credibility analysis and found that plaintiff's

subjective complaints of disabling pain and limitations were not entirely credible. The ALJ considered the combined effect of plaintiff's impairments and found that plaintiff's impairments were not disabling prior to the expiration of her insured status. Accordingly, the undersigned recommends that the decision of the Commissioner denying plaintiff's benefits be affirmed.

## **RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner denying plaintiff's applications for Disability Insurance Benefits under Title II of the Social Security Act be **affirmed**.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.

Dated this  14th  day of January, 2013.

LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE